Gtlmore, J.
But two or three of the many errors assigned ■ on the record present questions worthy of particular notice.
First. It is shown that the court permitted the state to introduce testimony tending to prove that Lake and Judson’s mare, for injuring which the defendant stood indicted, was afflicted with a swelling on each side, immediately back of the shoulders, and that the center of the swollen parts had been punctured with a sharp-pointed instrument, such as the use of a hypodermic syringe would occasion.
The state was further allowed to introduce testimony tending to show that at or about the same time, in the same village, a number of other horses were afflicted and injured in substantially the same manner as Lake and Jud~ *181 -.son’s mare. The defendant below objected and excepted to the testimony as to inj uries to other horses, on the ground that they were separate and distinct offenses from that for which the defendant was indicted, and was in effect putting him on trial for separate and distinct offenses at the same time.
It is proper to say that the theory upon which the state proceeded in the trial was, that the defendant inflicted the injury on Lake and Judson’s mare for the purpose of making money, by getting the mare to treat professionally for the cure of the injury. It was shown that the defendant had, shortly before the alleged injury was committed, been repeatedly predicting that a new epidemic horse disease, which he was thoroughly competent to treat and cure, was surely coming, and nearly all the horses would have it. lie had seen and examined the other horses afflicted at the same time, and declared that they were diseased in the same way as Lake and Judson’s mare, and that they were all afflicted with the new disease that he had foretold was coming.
With a view of showing that the desire and expectation of gain was the motive that prompted the defendant to commit the alleged offense, his declarations made before it was committed, and in reference to it after its commission, and also in reference to other cases of a like kind occurring at the same time, which he compai’ed to the case for which he stood indicted, were all admitted in evidence, and tended to show that, in the mind of the defendant at least, the several cases were connected, and oiiginated from the same cause.
While the general rule unquestionably is, that a distinct crime, in no way connected with that upon which the defendant stands indicted, can not be given in evidence against him on the trial, this rule is not applicable to a case in which it is clearly shown that a connection, in the mind of the defendant, must have existed between the offense charged in the indictment and others of a similar nature. When such connection exists, evidence of such *182 other offense is admissible, not for the purpose of raising a-presumption of guilt on the hypothesis that a man who commits one crime will probably commit another, but for the purpose of showing a motive or purpose prompting the commission of the'offense laid in the indictment; and being competent for this purpose, it could not have been properly excluded on the ground that it tended to prove the commission of other and distinct offenses.
Second. It is claimed that the court erred in refusing to give to the jury the special instructions requested by the defendant.
The instructions requested, are all substantially embraced in this proposition : That in order to constitute the offense charged in the indictment, it must be proved that the defendant committed the alleged injury by reason of personal malice toward the owner of the animal.
It is well settled that at the common law, indictable malicious mischief can not be committed on any animal by reason of malice, passion, or anger toward it; and inasmuch as we have a statute in this state making cruelty to animals a punishable misdemeanor, it may be fairly argued that the statute under which the defendant is indicted, does not include cases in which it might be made to appear that the malicious mischief charged, consisted of injuries done to the animal from mere malice, resentment, or anger toward it. But it by no means follows that the offense with which the defendant is charged would not have been punishable under the English statutes, or is not punishable under our statute, as the decisions under the English statutes do not go to the extent claimed by counsel for plaintiff' in error. The most celebrated English statutes on this srrbject are those of 22 and 23 Car. 2, c. 7, and 9 Geo. 1, c. 22, commonly called the Black Act; the latter having been held to-be an extension of the former. On conviction under the latter act, the prisoner was to be “ adjudged guilty of felony without benefit of clergy.” The preamble to the first-named act was as follows : “ Whereas, divers evil-disposed persons, intending the ruin and impoverishment of their fellow-subjects,,. *183 have devised and of late secretly in the night time, and at other times when they think their deeds are not known, frequently practiced in several parts of this kingdom unlawful and wicked courses in burning of ricks, etc., and cutting, maiming, wounding, and killing of horses, etc., for the prevention thereof,” enacts, etc. The description of the offense in our statute is substantially the same, and probably taken from the Black Act.
It will be seen that the penalty for a violation of the Black Act was so severe as to seemingly render it disproportionate to the crime, which of itself would incline the judges to give the act a construction in favor of life, where it was possible to do so.
The leading authority on the point under discussion is Pearce’s case, 2 Leach, 594, which was an indictment under the Black Act for “ feloniously, unlawfully, willfully, and maliciously maiming and wounding a cow.” It was held by the court that it was necessary to show that the fact was committed from some malicious motives toward the owner, and not merely from an angry and passionate disposition toward the beast itself, without any intention of thereby injuring the owner.
Shepherd’s case, 2 Leach, 609, and others are to the same effect. The key to these decisions is furnished by Mr. East, who, in speaking of the preamble above quoted, and the two acts named, by reference, says: “ The offense herein described seems by the preamble to be pointed at such as commit it from a motive of malice to the owner of the property.” 2 East’s P. C. 1063. And after quoting the statutes and noticing the cases above cited and others on the same point, he concludes the subject in these words: “ In all these cases there was reasonable evidence appearing upon the face of the transaction itself to impute the motive of the fact to resentment against the particular animals, and not to any personal malice against the owner. Bat it does not appear to have been decided that it is necessary to give express evidence of previous malice against the owner, in order to bring a case within the act; but the fact being proved to *184 be done willfully, which can only proceed from a brutal or malignant mind, it seems a question solely for the consideration of the jury to attribute the real motive to it, to which the transaction itself will most probably furnish a clue.” East's P. C. 1074. Erom this it appears, that notwithstanding the severity of the penalty, and the fact that by the preamble to the first-named act, the offense seems to be pointed at such as committed it from motives of malice against the owner, the English decisions only went to the extent of holding that there could be no conviction where, upon the face of the transaction itself, the motive for the act could be imputed only to resentment or anger against the particular animal. In all other cases, the question of malice was to bo left to the jury to be- determined by the testimony. Having borrowed the English statute, we accept the above as the proper construction to be given to our statute on this point.
W e are aware that the decisions in some of the states seem to go further than this, but we decline to follow them.
Third. It is claimed that the court erred in the instructions given to the jury on the question of malice.
The offense with which the defendant was charged, if perpetrated at all, must have been done willfully and deliberately, and from the testimony set out in the record the jury was warranted in finding that it was done for the purpose of gaining by another’s loss; the act itself was cruel and seriously injurious to the animal. These circumstances carry with them unmistakable indications of a malevolent and wicked spirit; and where an act is so done, for such a purpose, with such consequences and in such a spirit, the law infers that it was done maliciously. In effect, the jury was so instructed by the court on this point.
Finding no error, either in the admission of testimony or in refusing to give the instructions requested, or in the charge given to the jury, the judgment of the Court of Common Pleas must be affirmed.

Judgment accordingly.

McIlvaine, C. J., Welch, White, and Rex, JJ., concurred.